Joseph C. O'Keefe
Mark A. Saloman
Robert S. Schwartz
PROSKAUER ROSE LLP
One Newark Center, 18th Floor
Newark, New Jersey 07102
Phone: 973.274.3200

*and*

Bradley I. Ruskin*
Jeffrey H. Warshafsky*
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Phone: (212) 969-3000
*Pro hac vice* admission pending

*Attorneys for NFL Properties LLC,*
*PDB Sports, Ltd d/b/a Denver*
*Broncos, and Football Northwest LLC*
*d/b/a Seattle Seahawks*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

NFL PROPERTIES LLC, PDB SPORTS, LTD
d/b/a DENVER BRONCOS, and FOOTBALL
NORTHWEST LLC d/b/a SEATTLE
SEAHAWKS,

                         Plaintiffs,

               v.

DOES 1 through 100, inclusive,

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

_____ - cv - _____

**[FILED UNDER SEAL PURSUANT TO 15 U.S.C. § 1116]**

**VERIFIED COMPLAINT**

       Plaintiffs NFL PROPERTIES, LLC ("NFLP"), PDB SPORTS, LTD d/b/a DENVER

BRONCOS (the "Denver Broncos"), and FOOTBALL NORTHWEST LLC d/b/a SEATTLE

SEAHAWKS (the "Seattle Seahawks"), by their attorneys PROSKAUER ROSE LLP, for their

Verified Complaint against Defendants DOES 1 through 100, inclusive, allege upon personal knowledge with respect to the allegations relating to Plaintiffs, and upon information and belief with respect to those allegations concerning Defendants and/or third parties, as follows:

1.     Plaintiff NFLP's address is 345 Park Avenue, New York, New York. Plaintiff Denver Broncos' address is 13655 Broncos Parkway, Englewood, CO 80112.  Plaintiff Seattle Seahawks' address is 12 Seahawks Way, Renton, WA 98056.  Defendants' addresses are unknown because the identities and locations of the unnamed Defendants in this action cannot be ascertained until they commence their illegal counterfeiting activities described below.

## INTRODUCTION

2.     Trademark counterfeiting is an illegal, multi-billion dollar business that harms consumers – who are deceived into believing they are buying genuine goods when they are actually buying counterfeits – and brand owners – who are subject to a loss of goodwill from these lesser quality counterfeits bearing their marks and are deprived of sales.  Defendants in this litigation consist primarily of large-scale, professional counterfeiters and largely anonymous and mobile middlemen and street vendors that sell unlicensed, counterfeit souvenir merchandise ("Counterfeit Merchandise") and unlicensed, unredeemable Super Bowl tickets ("Counterfeit Tickets") bearing trademarks, logos, and other identifying indicia that are owned and/or controlled by the National Football League ("NFL"), NFLP, and the NFL's 32 member clubs (the "Member Clubs"), including the Denver Broncos and the Seattle Seahawks.  Defendants seek to trade off the enormous popularity and goodwill of the NFL, its Member Clubs, and its championship game, the Super Bowl game, by selling unlicensed, Counterfeit Merchandise and Counterfeit Tickets.

3.     The NFL and its Member Clubs annually present a season of football games that culminate in a championship called the "Super Bowl," which is one of the most popular sporting events of all time.  This year, Plaintiffs, the Denver Broncos and the Seattle Seahawks, will be competing in Super Bowl XLVIII, which will be held at MetLife Stadium in East Rutherford, Bergen County, New Jersey on Sunday, February 2, 2014.

4.     New Jersey and New York are co-hosting Super Bowl XLVIII, and numerous Super Bowl XLVIII-related events are scheduled to take place throughout New Jersey in the days leading up to the game.

5.     Defendants descend on the region hosting the Super Bowl game shortly before the date of the game, distribute their Counterfeit Merchandise and Counterfeit Tickets for ultimate cash sale, and then disappear without detection.  These individuals and companies often use false names, business addresses, and sham forms of business organizations.

6.     Defendants' counterfeiting irreparably injures the public and Plaintiffs. Consumers are deceived into mistakenly believing that they are purchasing genuine products authorized by Plaintiffs when, in fact, they are buying substandard counterfeit products.  When the Counterfeit Merchandise prematurely breaks, tears, shrinks, or fades, consumers question the quality of Plaintiffs' products since the products bear counterfeits of Plaintiffs' trademarks. When fans attempt to use the Counterfeit Tickets to gain entry into the Super Bowl game but are turned away, the fans become angry with Plaintiffs, again because the tickets bear counterfeits of Plaintiffs' trademarks.  Further, these counterfeit goods and tickets dilute the value of Plaintiffs' trademarks.

7.     Plaintiffs have expended significant resources to investigate and stop this illegal counterfeiting to prevent consumers from being deceived and to protect the Plaintiffs' reputations for high quality products and events as symbolized by their well-known trademarks.

8.     Defendants' sale of unlicensed Counterfeit Merchandise and Counterfeit Tickets bearing an imitation of Plaintiffs' well-known trademarks is a direct violation of federal trademark law and New Jersey's trademark laws, and the Plaintiffs' rights under those laws. Accordingly, Plaintiffs seek a temporary restraining order, seizure order, and preliminary and permanent injunctive relief to stop Defendants' continued deception of the public and irreparable injury to Plaintiffs by Defendants' sale and distribution of Counterfeit Merchandise and Counterfeit Tickets.  Plaintiffs are seeking the temporary restraining order and seizure order on an *ex parte* basis because, as explained in Plaintiffs' contemporaneously filed Memorandum of Law and supporting affidavits, proceeding on notice would render such relief meaningless for the reason that Defendants easily would circumvent the orders.[1]

## PARTIES

9.     Plaintiff NFL Properties LLC is a Delaware limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 345 Park Avenue, New York, New York.  NFLP is the authorized representative of the NFL and its 32 Member Clubs for the licensing and protection of their names, logos, symbols, and other identifying marks and indicia.  The NFL is an unincorporated association of the Member Clubs, each of which owns and operates a professional football team engaged in providing entertainment services to the public in the form of competitive professional football

---

[1] Because Defendants and others are committing and will commit identical unlawful acts in New York City, Plaintiffs intend to file a similar action and seek similar relief in New York federal court.

games.  The NFL and its Member Clubs have adopted and used in commerce certain trademarks, logos, symbols, and other identifying indicia relating to the activities of the NFL and the Member Clubs (referred to herein collectively as the "NFL Trademarks").

10.     Plaintiff PDB Sports, Ltd, an NFL Member Club, is a Colorado limited partnership with its principal place of business in Englewood, Colorado.  PDB Sports, Ltd owns and operates a professional football team known as the Denver Broncos.

11.     Plaintiff Football Northwest LLC, an NFL Member Club, is a Delaware limited partnership with its principal place of business in Renton, Washington.   Football Northwest LLC owns and operates a professional football team known as the Seattle Seahawks.

12.     As noted, the Denver Broncos and the Seattle Seahawks will compete for the NFL championship in Super Bowl XLVIII, which will be played, with much anticipation and fanfare, on Sunday, February 2, 2014 at MetLife Stadium in East Rutherford, New Jersey.

13.     Plaintiffs are informed and believe, and on that basis allege, that Defendants are corporations, partnerships, proprietorships, unincorporated associations, and individuals whose identities and addresses are presently unknown to Plaintiffs and are not presently capable of ascertainment.  Plaintiffs are informed and believe, and on that basis allege, that Defendants are or will be in Bergen County (including but not limited to in the vicinity of MetLife Stadium), Essex County (the location of numerous Super Bowl XLVIII-related events), Hudson County (where Denver Broncos and Seattle Seahawks football players will be staying at local hotels), and elsewhere in New Jersey, on the days leading up to, and on the day of, Super Bowl XLVIII, for the purposes of manufacturing, advertising, offering for sale, distributing, and/or selling Counterfeit Merchandise and Counterfeit Tickets in violation of Plaintiffs' rights,

as more fully alleged herein, and accordingly are or will be subject to the jurisdiction and venue of this Court.

## JURISDICTION AND VENUE

14.     This is an action for trademark counterfeiting and trademark infringement, trademark dilution, and unfair competition and false designation of origin arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq*., as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 (October 12, 1984), and the Prioritizing Resources and Organization for Intellectual Property Act of 2007, H.R. 4279 (October 13, 2008) (the "Lanham Act"), and for unlawful and deceptive acts and practices under the laws of the State of New Jersey.

15.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 1121.  This Court has jurisdiction, pursuant to the principles of supplemental jurisdiction and 28 U.S.C. § 1367, over Plaintiffs' claims arising under the laws of the State of New Jersey.

16.     Defendants are committing the unlawful acts complained of herein in New Jersey and this District and are subject to the jurisdiction of this Court.

17.     Jurisdiction is proper in this Court because the causes of action set forth herein arise in whole or in part out of Defendants' (a) transacting business within the State of New Jersey; (b) committing tortious acts in the State of New Jersey; and (c) injuring Plaintiffs and the public in New Jersey, through acts committed in and outside of New Jersey.

18.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(a) in that the Defendants are entities or individuals subject to personal jurisdiction in this District.

Further, venue is appropriate since a substantial portion of the acts complained of herein were committed by Defendants within this District.

**FACTS**

**The NFL Trademarks**

19.    NFL football is and for many years has been the most popular professional sport in the United States.  Millions of persons attend the games each year and millions more follow the respective teams and games in the electronic and print media and access and download information and images related to the games via the Internet.  To identify and distinguish their respective football teams and games and the entertainment services that they provide, the Member Clubs, including the Denver Broncos and the Seattle Seahawks, have adopted and use in commerce, including in the State of New Jersey, certain trademarks, symbols, logos, uniform designs, emblems, official team color combinations, and other identifying indicia. The Denver Broncos have, for example, adopted and used the marks DENVER BRONCOS, BRONCOS, the Broncos logo designs, the Broncos' uniform design marks, and the Broncos' helmet design, among others.  Similarly, the Seattle Seahawks have adopted and used the marks SEATTLE SEAHAWKS, SEAHAWKS, the Seahawks logo designs, the Seahawks' uniform design marks, and the Seahawks' helmet design, among others.

20.    The NFL has also adopted and used in commerce certain trademarks relating to the activities of the League.  The NFL has registered a number of its marks with the United States Patent and Trademark Office ("USPTO"), and with the New Jersey Division of Revenue and Enterprise Services, for a wide variety of products, including SUPER BOWL, XLVIII, SUPER SUNDAY, the Super Bowl XLVIII logo, the Lombardi Trophy Design, NATIONAL FOOTBALL LEAGUE, NFL, the NFL Shield logo, AFC, the AFC logo, NFC, and the NFC logo, among others.  True and correct copies of the Certificates of Registration for the

7

marks registered by the NFL with the USPTO are attached collectively as Exhibit A, and are incorporated by reference herein.  True and correct copies of the Certificates of Registration for the marks registered by the NFL with the New Jersey Division of Revenue and Enterprise Services are attached collectively as Exhibit B, and are incorporated by reference herein.

21.     The Denver Broncos and the Seattle Seahawks have also registered certain of their marks with the USPTO and with the New Jersey Division of Revenue and Enterprise Services.  True and correct copies of the Certificates of Registration for the marks registered with the USPTO are attached collectively as Exhibit C, and are incorporated by reference herein. True and correct copies of the Certificates of Registration for the marks registered with the New Jersey Division of Revenue and Enterprise Services are attached collectively as Exhibit D, and are incorporated by reference herein.

22.     The NFL Trademarks are extremely well-known to the public because of the great popularity of NFL football and the extensive media coverage of the NFL and its Member Clubs, including the Denver Broncos and the Seattle Seahawks.  The NFL Trademarks have attained secondary meaning as identifiers of the NFL and the Member Clubs as the source or sponsor of merchandise upon which the NFL Trademarks appear.

**The Business of NFLP**

23.     NFLP has entered into numerous licensing agreements with third parties, whereby it has licensed said parties to use the NFL Trademarks in connection with the manufacture and sale of articles of merchandise, the quality and style of which are controlled and monitored by NFLP on behalf of the Member Clubs and the NFL.  NFLP licenses the use of the NFL Trademarks on a wide variety of goods, including apparel such as t-shirts, garments and hats, souvenir items such as pennants, novelty items and games, and many other products. Photographs of the numerous articles of merchandise licensed by NFLP appear on sites on the

Internet, including, but not limited to, www.nflshop.com.  Licensed merchandise is widely available throughout the United States, including in New Jersey.  As a result of the great popularity of NFL football and the widespread public recognition of the NFL Trademarks, the NFL Trademarks are extremely valuable commercial assets and embody goodwill of incalculable value.

24.     NFLP's licensees have invested significant amounts of capital and have devoted substantial amounts of time and money to the production, marketing, and promotion of their products bearing the NFL Trademarks, and have established significant consumer demand for these items through such efforts.  Consumers readily identify merchandise bearing the NFL Trademarks as being sponsored and/or approved by the NFL and the Member Clubs.

25.     Merchandise manufactured by NFLP's licensees bearing the NFL Trademarks are sold in interstate commerce and purchased by various retail outlets throughout the United States, including in New Jersey, because of the indication of quality represented by the NFL Trademarks thereon and the perceived sponsorship thereof by the NFL and the Member Clubs.

26.     NFLP has also been authorized by the NFL, the Denver Broncos, the Seattle Seahawks, and the other Member Clubs of the NFL to license the use of the registered NFL Trademarks on tickets that allow fans entry into NFL games, including the Super Bowl games.  Consumers believe that tickets bearing NFL Trademarks are authorized by the NFLP and its Member Clubs and that such tickets will be honored when presented for entry into NFL games.

**NFLP'S Trademark Protection Program**

27.     To protect the NFL Trademarks from infringement, dilution, disparagement, and misappropriation, NFLP has established a program of trademark protection.

Instances of unauthorized uses of the NFL Trademarks by third parties are investigated by NFLP and its security and legal personnel and other representatives. When appropriate, such third parties are contacted by counsel with a request to cease and desist from unauthorized use of the NFL Trademarks.

28.     NFLP annually handles hundreds of instances of unauthorized use of the NFL Trademarks. The great majority of such infringement matters are settled by the infringers' agreement to cease further sales of the unlicensed merchandise. On occasion, when infringers have persisted in their unlawful conduct, NFLP has obtained injunctive relief against the sale of Counterfeit Merchandise in a number of federal and state courts.

**The Super Bowl Game and NFLP's Super Bowl Trademark Protection Program**

29.     As noted, the Super Bowl game is one of the most popular sporting events of all time. Annually, the Super Bowl is one of the most watched sporting events world-wide and, in recent years, it has been the most-watched American television broadcast. For example, Super Bowl XLVII, played in February 2013 between the San Francisco 49ers and the Baltimore Ravens, had a total of 164.1 million total viewers (108.4 million average viewers), making it the most-watched American television program in history. Intense media attention is focused on the game and the two participating teams during the period leading up to the game. This year, in anticipation of the Super Bowl XLVIII game, fans are accessing and downloading information and images relating to the Super Bowl, the NFL, the Denver Broncos, and the Seattle Seahawks via the Internet, and at the official websites of the NFL, www.nfl.com and www.superbowl.com. In all respects, the Super Bowl game is the culmination of the NFL season and showcases the activities of the NFL and the Member Clubs, particularly the game participants.

30.     To meet the public demand for merchandise relating to each year's Super Bowl game, NFLP annually develops and licenses a Super Bowl graphic design logo for use in

connection with the production and sale of licensed merchandise relating to the Super Bowl game.  NFLP has licensed approximately 50 companies to produce high-quality merchandise relating to the Super Bowl XLVIII game, including apparel such as t-shirts, garments and hats, souvenir items such as pennants, novelty items and games, and many other products. Photographs of representative samples of licensed Super Bowl XLVIII game products are attached hereto as Exhibit E.

31.    NFLP works closely with licensees and many retail outlets to assure that sufficient quantities of Super Bowl game-related licensed merchandise are available to the public.  This merchandise is currently available on many eCommerce sites as well as at numerous retail outlets in New Jersey, and will be available for purchase at and in the vicinity of numerous Super Bowl XLVIII-related events in New Jersey.

**NFLP's Previous Seizure Orders**

32.    The great popularity of the Super Bowl game, and the strong public interest in the game itself and the competing teams, annually generates the production and sale of substantial quantities of Counterfeit Merchandise bearing spurious replications of the NFL Trademarks.   Counterfeit Tickets, also bearing replications of NFL Trademarks, are also produced and sold to fans seeking entry into the Super Bowl.

33.    Counterfeit Merchandise and Counterfeit Tickets are generally produced by large-scale, professional counterfeiters for distribution through networks of largely anonymous and mobile middlemen and street vendors, who descend on the region hosting the Super Bowl game shortly before the date of the game, distribute their merchandise and tickets for ultimate cash resale, and disappear without detection.  These individuals and companies often utilize fictitious names and business addresses, as well as sham forms of business organizations, to avoid detection as the source of Counterfeit Merchandise and Counterfeit Tickets.

34.     To combat this problem, before each Super Bowl game since Super Bowl XVII in Pasadena, California in 1983, NFLP has obtained *ex parte* seizure orders, empowering NFLP's security representatives to seize and impound Counterfeit Merchandise.

35.     These orders have enabled NFLP to diminish the sale of Counterfeit Merchandise and Counterfeit Tickets effectively, thereby protecting the goodwill and reputation of the NFL and the competing teams at the time when they are being showcased.

**Sales of Counterfeit Merchandise and Counterfeit Tickets**

36.     Recent investigations by law enforcement authorities and/or security representatives of NFLP have revealed intentional, knowing, wanton and reckless production, distribution, offering for sale and sale, and preparation for production and distribution of significant quantities of Counterfeit Merchandise, as well as production and sale of Counterfeit Tickets, by itinerant vendors who have indicated that they intend to continue to sell said Counterfeit Merchandise and Counterfeit Tickets as Super Bowl XLVIII approaches. Photographs of representative samples of Counterfeit Merchandise purchased during this year's playoff season and last year's Super Bowl game in New Orleans, Louisiana are attached as Exhibit F.

37.     The unauthorized sale of such Counterfeit Merchandise and Counterfeit Tickets by Defendants is likely to cause confusion of the public, to cause mistake, and to deceive, in that the members of the public attending the Super Bowl game or otherwise purchasing said Counterfeit Merchandise and Counterfeit Tickets will believe that said merchandise is licensed by, sponsored by, or otherwise approved by or affiliated with the NFL, NFLP, the Denver Broncos, and the Seattle Seahawks.  Sales of Counterfeit Merchandise and Counterfeit Tickets will injure the business of NFLP by interfering with the sales of merchandise by NFLP's licensees and by placing the goodwill of the NFL, the Denver Broncos, and the

Seattle Seahawks, as embodied in the NFL Trademarks, in the hands of parties over whom NFLP, the Denver Broncos, and the Seattle Seahawks have no control.

38.     The goodwill of the NFL and its Member Clubs is embodied in the NFL Trademarks because the public perceives that merchandise bearing the NFL Trademarks as sponsored or authorized by the NFL and the Member Clubs.   This goodwill is extremely important to the NFL's ability to compete in the highly competitive market for entertainment services.   Because the Super Bowl game is the NFL's showcase event, the sale of inferior quality Counterfeit Merchandise and unredeemable Counterfeit Tickets will, particularly at this critical time, cause immediate and irreparable damage to the goodwill and reputation of Plaintiffs.

39.     Counterfeit Merchandise and Counterfeit Tickets are produced by professional infringers who concentrate on large-scale, short-term events such as sporting events and concerts.    These infringers produce inferior quality Counterfeit Merchandise and unredeemable Counterfeit Tickets as quickly as they can and generally distribute it through itinerant vendors.   Professional infringers recognize the illegality of their conduct and thwart NFLP's investigative efforts by concealing their identities, using middlemen, or transferring the merchandise upon detection.   NFLP's previous trademark protection efforts during the Super Bowl game period demonstrate that the professional infringers who "work" the site of the Super Bowl game will defy or avoid temporary restraining orders and will continue to sell their Counterfeit Merchandise in any possible manner.   The only effective way to combat this problem is to seize the goods and tickets at the point of sale.

40.     The counterfeiters at the Super Bowl game are aware of the illegality of their conduct, and often act in concert with or through anonymous distributors so that it is extremely difficult, if not impossible, to identify the source of any given Counterfeit

Merchandise that is sold in a retail store, at a street stand, or out of portable containers. They lack a definite or permanent business identity and cannot be located or served with process in conventional fashion. Thus, notice to the producers and vendors of the counterfeit Super Bowl merchandise and counterfeit Super Bowl tickets that will be sold in New Jersey is impracticable and fruitless. Once word spreads that legal action may be taken against infringers, merchandise will be concealed or transferred, rendering it extremely unlikely that Plaintiffs will be able to obtain evidence to secure any meaningful relief or that the merchandise will ever be kept out of channels of distribution.

41.    Defendants' activities have caused and will continue to cause Plaintiffs grave and irreparable harm. Unless restrained or enjoined by this Court without notice, Defendants will persist in their activities, causing Plaintiffs further irreparable harm before any Defendant can be heard in opposition.

42.    Because the acts of Defendants will continue in the future unless restrained, Plaintiffs have no adequate remedy at law.

**COUNT I**
**(Federal Trademark Infringement - 15 U.S.C. § 1114)**

43.    Plaintiffs repeat and reallege the allegations set forth above as if fully set forth herein.

44.    The NFL Trademarks and the goodwill of the businesses associated with them in the United States are of great and incalculable value, are highly distinctive, and have become universally associated in the public mind with the authentic merchandise upon which the NFL Trademarks appear and the related services of the highest quality and reputation, finding their source from Plaintiffs.

45.     Without the Plaintiffs' authorization or consent, and with knowledge of both the Plaintiffs' well-known prior rights in the NFL Trademarks and that Defendants' Counterfeit Merchandise and Counterfeit Tickets bear marks which are intentionally identical to, or imitations of, the NFL Trademarks, Defendants have reproduced, counterfeited, copied, and sold Counterfeit Merchandise and Counterfeit Tickets to the consuming public of the United States in direct competition with Plaintiffs' sale of genuine NFL merchandise and tickets, in or affecting interstate commerce.

46.     Defendants' use of copies or simulations of the NFL Trademarks on Counterfeit Merchandise and Counterfeit Tickets is likely to cause and is causing confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Merchandise and Counterfeit Tickets, and is likely to deceive the public into believing the Counterfeit Merchandise and Counterfeit Tickets originate from, are associated with, or are otherwise authorized by Plaintiffs, all to the damage and detriment of the Plaintiffs' reputations, goodwill and sales.  Accordingly, Defendants are using reproductions, counterfeits, and copies of the federally registered NFL Trademarks in violation of 15 U.S.C. § 1114.

47.     Defendants' acts demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the NFL Trademarks to Plaintiffs' great and irreparable injury.

48.     Defendants' acts have caused and will continue to cause the Plaintiffs irreparable harm.

49.     Unless restrained and enjoined by this Court, Defendants will persist in their activities, thereby causing Plaintiffs irreparable harm.

50.     Plaintiffs have no adequate remedy at law.

51.     Defendants' acts are exceptional within the meaning of 15 U.S.C § 1117.

## COUNT II
### (Federal Unfair Competition and False Designation of Origin - 15 U.S.C. § 1125(a))

52.     Plaintiffs repeat and reallege the allegations set forth above as if fully set forth herein.

53.     Defendants' knowing use of reproductions or confusingly similar imitations of the NFL Trademarks in connection with the Counterfeit Merchandise and Counterfeit Tickets is causing and will continue to cause confusion, deception, and mistake among the general purchasing public of the United States by creating the false and misleading impression that Defendants' goods are manufactured or distributed by Plaintiffs; or are affiliated, connected, or associated with the NFL; or have the sponsorship, endorsement, or approval of Plaintiffs.

54.     By misappropriating and using the NFL Trademarks and Plaintiffs' trade names, Defendants misrepresent and falsely describe to the general public the origin and source of the Counterfeit Merchandise and Counterfeit Tickets and create a likelihood of confusion by consumers as to the source of such products.

55.     Defendants' unlawful, unauthorized, and unlicensed reproduction, counterfeiting, copying, and sale of the Counterfeit Merchandise and Counterfeit Tickets create express and implied misrepresentations that the Counterfeit Merchandise and Counterfeit Tickets were created, authorized, or approved by Plaintiffs, all to Defendants' profit and to Plaintiffs' great damage and injury.

56.     Defendants' acts are in violation of 15 U.S.C. § 1125(a) in that Defendants' use of the NFL Trademarks in connection with the Counterfeit Merchandise and

Counterfeit Tickets in interstate commerce, constitutes a false designation of origin and unfair competition.

57.    Defendants' acts demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the NFL Trademarks to Plaintiffs' great and irreparable injury.

58.    Defendants' acts have caused and will continue to cause the Plaintiffs irreparable harm.

59.    Unless restrained and enjoined by this Court, Defendants will persist in their activities, thereby causing Plaintiffs irreparable harm.

60.    Plaintiffs have no adequate remedy at law.

61.    Defendants' acts are exceptional within the meaning of 15 U.S.C § 1117.

### COUNT III
### (Federal Trademark Dilution - 15 U.S.C. § 1125(c))

62.    Plaintiffs repeat and reallege the allegations set forth above as if fully set forth herein.

63.    The NFL Trademarks are famous within the meaning of the Trademark Dilution Revision Act of 2006 because, among other things: (1) the NFL Trademarks are highly distinctive; (2) Plaintiffs have used the NFL Trademarks continuously for decades throughout the United States to promote Plaintiffs' goods and services; (3) Plaintiffs and their authorized licensees have advertised and publicized the NFL Trademarks for decades throughout the United States; (4) the NFL Trademarks are widely recognized by the general consuming public of the United States; and (5) many of the NFL Trademarks are the subject of valid and subsisting registration under the Lanham Act on the Principal Register.

64. The NFL Trademarks have become universally associated in the public mind with the authentic merchandise upon which the NFL Trademarks appear and the related services of the highest quality and reputation, finding their source from Plaintiffs.

65. Defendants' unlawful, unauthorized, and unlicensed reproduction, counterfeiting, copying, and sale of the Counterfeit Merchandise and Counterfeit Tickets is likely to cause blurring, dilution, and tarnishment of the NFL Trademarks because Defendants' use of the NFL Trademarks is likely to deceive the public into believing the lower-quality Counterfeit Merchandise and the unredeemable Counterfeit Tickets originate from, are associated with, or are otherwise authorized by Plaintiffs. This will lead consumers to believe that Plaintiffs' goods and services connected with the NFL Trademarks are of low quality.

66. Defendants' acts are in violation of 15 U.S.C. § 1125(c) in that Defendants' use of the NFL Trademarks in connection with the Counterfeit Merchandise and Counterfeit Tickets in interstate commerce, dilutes, blurs, and tarnishes the distinctiveness of the famous NFL Trademarks with consequent damage to Plaintiffs and to the substantial business and goodwill symbolized by the NFL Trademarks.

67. Defendants' acts demonstrate an intentional, willful, and malicious intent to trade on Plaintiffs' reputation and to cause dilution of the famous NFL Trademarks, to Plaintiffs' great and irreparable injury.

68. Defendants' acts have caused and will continue to cause the Plaintiffs irreparable harm.

69. Unless restrained and enjoined by this Court, Defendants will persist in their activities, thereby causing Plaintiffs irreparable harm.

70. Plaintiffs have no adequate remedy at law.

71.     Defendants' acts are exceptional within the meaning of 15 U.S.C § 1117.

## COUNT IV
### (Trademark Counterfeiting, N.J.S.A. 56:3-13.16)

72.     Plaintiffs repeat and reallege the allegations set forth above as if fully set forth herein.

73.     The reproduction, counterfeiting, copying and sale by Defendants of Counterfeit Merchandise and Counterfeit Tickets bearing the marks of the NFL, the Denver Broncos, and the Seattle Seahawks registered with the New Jersey Division of Revenue and Enterprise Services is likely to cause confusion or mistake or to deceive consumers, the public, or the trade as to their source of origin, and constitutes trademark counterfeiting in violation of N.J.S.A. 56:3-13.16.

74.     Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not entitled in law or equity.

75.     Defendants' acts have caused and will continue to cause the Plaintiffs irreparable harm.

76.     Unless restrained and enjoined by this Court, Defendants will persist in their activities, thereby causing Plaintiffs further irreparable harm.

77.     Plaintiffs have no adequate remedy at law.

## COUNT V
### (Trademark Dilution, N.J.S.A. 56:3-13.20)

78.     Plaintiffs repeat and reallege the allegations set forth above as if fully set forth herein.

79.     Plaintiffs' trademarks, the NFL Trademarks, are famous in the State of New Jersey.

19

80.     Defendants' sale of Counterfeit Merchandise and Counterfeit Tickets bearing NFL Trademarks is likely to cause injury to the business reputations of Plaintiffs and to dilute the distinctive quality of said famous marks in violation of N.J.S.A. 56:3-13.20.

81.     Defendants' acts have caused and will continue to cause the Plaintiffs irreparable harm.

82.     Unless restrained and enjoined by this Court, Defendants will persist in their activities, thereby causing Plaintiffs irreparable harm.

83.     Plaintiffs have no adequate remedy at law.

**COUNT VI**
**(Unfair Trade Practices, N.J.S.A. 56:4-1)**

84.     Plaintiffs repeat and reallege the allegations set forth above as if fully set forth herein.

85.     Defendants' use of copies or simulations of the NFL Trademarks and/or Plaintiffs' trade names is likely to cause and is causing confusion, mistake, and deception among the general purchasing public as to the origin of Defendants' Counterfeit Merchandise and Counterfeit Tickets, and is deceiving the public into believing the Counterfeit Merchandise and Counterfeit Tickets originate from, are associated with, or are otherwise authorized by Plaintiffs.

86.     Defendants' acts constitute unfair trade practices and unfair competition in violation of N.J.S.A. 56:4-1.

87.     Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not entitled in law or equity.

88.     Defendants' acts have caused and will continue to cause the Plaintiffs irreparable harm.

89.    Unless restrained and enjoined by this Court, Defendants will persist in their activities, thereby causing Plaintiffs further irreparable harm.

90.    Plaintiffs have no adequate remedy at law.

## COUNT VII
### (Common Law Trademark Infringement)

91.    Plaintiffs repeat and reallege the allegations set forth above as if fully set forth herein.

92.    Plaintiffs own all rights, title, and interest in and to the NFL Trademarks, including all common law rights in such marks.

93.    Defendants, without authorization from Plaintiffs, have used and are continuing to use spurious designations in connection with the Counterfeit Merchandise and Counterfeit Tickets that are identical to, or substantially indistinguishable from, the NFL Trademarks.

94.    The foregoing acts of Defendants are likely to cause confusion or mistake or to deceive consumers, the public, or the trade as to whether the Counterfeit Merchandise and Counterfeit Tickets originate from or are affiliated with, sponsored by, or endorsed by Plaintiffs.

95.    Defendants' acts constitute trademark infringement in violation of the common law of the State of New Jersey.

96.    Defendants' acts demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the NFL Trademarks to Plaintiffs' great and irreparable injury.

97.    Defendants' acts have caused and will continue to cause the Plaintiffs irreparable harm.

21

98.     Unless restrained and enjoined by this Court, Defendants will persist in their activities, thereby causing Plaintiffs irreparable harm.

99.     Plaintiffs have no adequate remedy at law.

## COUNT VIII
### (Common Law Unjust Enrichment)

100.    Plaintiffs repeat and reallege the allegations set forth above as if fully set forth herein.

101.    Defendants' acts result in Defendants' unjust enrichment at Plaintiffs' expense, in violation of the common law of the State of New Jersey.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs NFL Properties LLC, PDB Sports Ltd, and Football Northwest LLC pray for a temporary restraining order, preliminary and permanent injunction, an order for seizure, damages, Defendants' profits, and other appropriate relief, as follows:

1.     That all Defendants served herein as Does 1 through 100, inclusive, and their respective officers, directors, agents, partners, employees, attorneys, representatives, successors, and assigns, and all other persons in active concert or participation with them or any of them, be temporarily and preliminarily enjoined and, upon final trial, permanently enjoined, from using in connection with the production, manufacture, advertisement, promotion, displaying for sale, offering for sale, sale, or distribution of any articles of merchandise or tickets bearing the marks: SUPER BOWL; XLVIII; SUPER SUNDAY; the Super Bowl XLVIII Logos, as depicted on Exhibit 1 to Plaintiffs' Proposed Temporary Restraining Order, Seizure Order, and Order to Show Cause for Preliminary Injunction (the "Proposed Order"); the Lombardi Trophy Logo, as depicted on Exhibit 1 to the Proposed Order; NATIONAL FOOTBALL LEAGUE; NFL; the NFL Shield Logos, as depicted on Exhibit 1 to the Proposed Order; AFC;

the AFC Logo, as depicted on Exhibit 1 to the Proposed Order; the AFC Champions Logo, as depicted on Exhibit 1 to the Proposed Order; NFC; the NFC Logo, as depicted on Exhibit 1 to the Proposed Order; the NFC Champions Logo, as depicted on Exhibit 1 to the Proposed Order; BRONCOS; DENVER BRONCOS; the Broncos Primary Logo, as depicted on Exhibit 2 to the Proposed Order; the Broncos Secondary Logo, as depicted on Exhibit 2 to the Proposed Order; the Broncos Logo Type, as depicted on Exhibit 2 to the Proposed Order; the Broncos Historic Logo, as depicted on Exhibit 2 to the Proposed Order; and the helmet and uniform designs of the Broncos, as depicted on Exhibit 2 to the Proposed Order; SEAHAWKS; SEATTLE SEAHAWKS; the Seahawks Primary Logo, as depicted on Exhibit 2 to the Proposed Order; the Seahawks Secondary Logo, as depicted on Exhibit 2 to the Proposed Order; and the helmet and uniform designs of the Broncos, as depicted on Exhibit 2 to the Proposed Order; the full team names, nicknames, logos, helmet and uniform designs, and related marks of any Member Club of the National Football League (including but not limited to, the Denver Broncos and the Seattle Seahawks), and any other NFL Trademarks, or any colorable imitations of any of the above, or anything confusingly similar thereto, unless said merchandise or tickets have been licensed by NFLP; from making any statement or representation, whatsoever or performing any act, which can or is likely to lead to the trade or public, or individual members thereof, to believe that any product manufactured, distributed or sold by Defendants is in any manner associated or connected with the Plaintiffs, or is sold, manufactured, licensed, sponsored, approved or authorized by Plaintiffs; from engaging in any other activity constituting unfair competition with Plaintiffs and/or misappropriation of Plaintiffs' property and property rights or constituting infringement of Plaintiffs' marks, or any of Plaintiffs' rights in, or to use or exploit such marks,

or constituting any dilution of the goodwill, name or reputation of the Plaintiffs; and from otherwise competing unfairly with NFLP, the Denver Broncos, and the Seattle Seahawks;

2.      That Plaintiffs and their duly authorized representatives be empowered and directed pursuant to the Lanham Act, 15 U.S.C. § 1116, N.J.S.A. 56:3-13.16, and the general equitable powers of the Court, and subject to appropriate restrictions and on the conditions as set forth in an order of this Court, to seize and sequester in a secure place, pending further hearing, any and all Counterfeit Merchandise and Counterfeit Tickets bearing the NFL Trademarks set forth in the preceding Paragraph of this Prayer for Relief, together with any cartons, vessels, boxes, or other containers in which said Counterfeit Merchandise and Counterfeit Tickets are stored, carried, displayed, or transported, or any devices used to produce or reproduce such Counterfeit Merchandise and Counterfeit Tickets, including, without limitation, silk screens, molds, matrices, heat transfers or printers in the possession, custody, or control of any Defendants served as Does 1 through 100, inclusive, during a period commencing as of 5:00 p.m. on Wednesday, January 29, 2014 and ending on Monday, February 3, 2014 at 11:59 p.m.;

3.      That all Defendants, and each of them, be ordered pursuant to the Lanham Act, 15 U.S.C. § 1116, N.J.S.A.  56:3-13.16, and the general equitable powers of the Court, to deliver up to the Court for destruction or other disposition, such as donation to a charitable institution, any Counterfeit Merchandise and Counterfeit Tickets in their possession, custody, or control and not seized pursuant to the order prayed for in Paragraph 2, *supra,* the sale or other disposition of which would violate the permanent injunction prayed for in Paragraph 1, *supra,* and all plates, molds, silk screens, heat transfers, matrices, or other devices for making or reproducing the same;

4.      That all Defendants, and each of them, be ordered to file with the Court, and to serve on counsel for Plaintiffs within thirty days of the entry of final judgment herein, a written statement under oath setting forth in detail the form and manner in which each Defendant has complied with the orders herein;

5.      That Plaintiffs may, subject to further order of the Court, dispose of the seized Counterfeit Tickets by destroying them and the Counterfeit Merchandise by destroying it, donating it to charity, or making such other disposition as appears appropriate;

6.      That Defendants account for and pay over to Plaintiffs profits realized by Defendants and damages caused to Plaintiffs, by reason of Defendants' unlawful acts herein alleged and, that the amount of damages for infringement of Plaintiffs' registered trademarks be increased by a sum not exceeding three times the amount thereof as provided by law; or, in the alternative, that Defendants be assessed statutory damages;

7.      That Plaintiffs be awarded their reasonable attorneys' fees, costs, and such other and further relief as the Court may deem equitable including, but not limited to, any relief set forth under 15 U.S.C. §§ 1114, 1116, 1117 and 1125; and

8.      That Plaintiffs be granted such other and further relief as the Court deems just and proper.

Dated: January 22, 2014                    Respectfully submitted,

                                           By: _O'C'all_

                                           Joseph C. O'Keefe
                                           Mark A. Saloman
                                           Robert S. Schwartz
                                           PROSKAUER ROSE LLP
                                           One Newark Center, 18th Floor

Newark, New Jersey 07102
Phone: 973.274.3200

*and*

Bradley I. Ruskin*
Jeffrey H. Warshafsky*
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Phone: (212) 969-3000
*Pro hac vice* admission pending

*Attorneys for NFL Properties LLC,*
*PDB Sports, Ltd d/b/a Denver*
*Broncos, and Football Northwest LLC*
*d/b/a Seattle Seahawks*

## 28 U.S.C. § 1746 CERTIFICATION

I certify under penalty of perjury under the laws of the United State of America that the foregoing is true and correct.  Executed on January 22, 2014.

_____
ANASTASIA DANIAS

## **VERIFICATION**

STATE OF NEW YORK

NEW YORK COUNTY

      BEFORE ME, the undersigned authority, a Notary Public, duly commissioned and

qualified in and for the State of New York, personally came and appeared:

ANASTASIA DANIAS

who declared that she is Senior VP and Chief Litigation Officer for the National Football League

and an officer of NFL Properties LLC, that she has read the foregoing Verified Complaint and

knows the content thereof, that the same are true to her knowledge except as to matters therein

stated to be alleged on information and belief, and as to those matters, she believes them to be

true.

 

ANASTASIA DANIAS

Sworn to and subscribed before me
this 22nd day of January, 2014.

NOTARY PUBLIC

```
DOLORES F DIBELLA
Notary Public, State of New York
No. 02DI6257648
Qualified in New York County
Commission Expires March 19, 2016
```